UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| SMITH-KEYS VILLAGE, INC. | ★<br>★ | CIVIL ACTION NO: _____ |
| **Plaintiff** | ★<br>★ | |
| | ★ | **JUDGE SUSAN O HICKEY** |
| VERSUS | ★<br>★ | |
| NATIONAL FIRE & MARINE | ★ | **MAGISTRATE JUDGE BARRY BRYANT** |
| INSURANCE COMPANY | ★<br>★ | |
| **Defendant** | ★<br>★ | |

## COMPLAINT

NOW COMES Plaintiff, Smith-Keys Village, Inc. ("Smith-Keys"), through undersigned counsel, for its Complaint against Defendant, National Fire & Marine Insurance Company ("National Fire"), and avers upon information and belief as follows:

### NATURE OF THE ACTION

1.     This is an action seeking declaratory relief pursuant to 28 U.S.C. §2201, *et seq.*, among other relief. An actual controversy of a justiciable nature exists between Smith-Keys and National Fire concerning the amount of property insurance available for the increased cost of construction ("ICC") coverage to rebuild the fire-damaged Smith-Keys apartments to comply with current law and building codes. Smith-Keys purchased $500,000 of ICC coverage from National Fire, but National Fire now claims its policy only provides $33,217 of coverage for increased costs of construction. If Smith-Keys is correct on the ICC limits, it can rebuild its apartments that caught fire; on the other hand; if National Fire is correct, Smith-Keys cannot rebuild the apartments as Smith-Keys has insufficient insurance coverage. This ICC limit

controversy alone is one of sufficient immediacy and significance to justify the entry of a declaratory judgment by the Court.

2.      Order(s) of declaratory relief on the amount of ICC insurance available to Smith-Keys, and the related two-year rebuild clause, will terminate the existing controversy between the parties with the exception of related equitable relief and Plaintiff's compensatory damages and extra-contractual liability of National Fire in its failure to timely pay proofs of loss and misrepresentations with respect to property insurance issued to Smith-Keys.

3.      Smith-Keys owns Section 8, HUD-financed apartments at 3202 Washington Street, Texarkana, Arkansas 71854 ("Apartments") built in March of 1970. On September 25, 2012, eight apartments in the Smith-Keys complex sustained serious fire damage with an estimated cost to rebuild over $1,100,000. When the fire occurred, Smith-Keys had $5,000,000 of property insurance, including $500,000 in ICC coverage, under National Fire policy MUA 100000144 ("Policy").

4.      The increased costs of construction to rebuild the fire-damaged Apartments is some $400,000. In May 2014, National Fire for the first time took the position that the amount of ICC coverage in this case was $33,271.85—not $500,000, as set forth in the Policy.

5.      As a non-profit corporation relying on Section 8 HUD financing, Smith-Keys has insufficient funds on its own to rebuild the Apartments to the condition they were when the fire occurred in September 2012, and has to rely on National Fire to make an unconditional commitment on ICC coverage and payments of amounts owed under the Policy for the costs of rebuilding the Apartments. National Fire has absolute control over the payment of amounts owed to Smith-Keys for the $1,100,000 in insured fire losses, and every incentive to delay payments under the Policy and misrepresent the amount of ICC coverage.

- 2 -

6.      There is a "two-year" clause in its Policy that it will claim voids any obligation it has to pay the $400,000 in ICC costs it owes if the rebuild of the fire-damaged Apartments is not completed within 2 years of the fire or by September 25, 2014. If this 2-year rebuild clause is enforceable, which is denied, and National Fire continues with its position that there is only $33,217 in ICC insurance for the rebuild, National Fire will force Smith-Keys to abandon the rebuilding of the fire-damaged Apartments, resulting in National Fire "pocketing" or saving all of the $1,100,000 in insured losses it owes Smith-Keys.

National Fire delayed disclosure of its ICC coverage position until May 2014 so that it could effectively deny Smith-Keys the ability to finish rebuilding the Apartments within 2 years of the fire and avoid over $1,100,000 (including $400,000 in ICC costs) in overall insured losses for the fire. Smith-Keys seeks a declaratory judgment that the "two-year" clause is invalid.

7.      Otherwise, Smith-Keys seeks recovery of compensatory and extra-contractual liability damages from National Fire for amounts owed under the Policy, and the bad faith conduct of National Fire in its misrepresentation of the amount of ICC coverage and unreasonable delays in payment of amounts owed under the Policy for the losses sustained by Smith-Keys in the fire of September 25, 2012.

## THE PARTIES

8.      At all material times, Plaintiff, Smith-Keys, was and is a non-profit corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Memphis, Tennessee. It is dedicated to providing Section 8 affordable housing through HUD for families and individuals in Texarkana, Arkansas.

713457

9.      At all material times, Defendant, National Fire, was and is a for-profit corporation organized and existing under the laws of the State of Nebraska, with its principal place of business in Omaha, Nebraska.

## STATEMENT OF JURISDICTION AND VENUE

10.     Venue is proper pursuant to 28 U.S.C. § 1391, as a substantial amount of the events giving rise to this controversy occurred in the Western District of Arkansas.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and cost.

12.     This Court has personal jurisdiction over Defendant based on Defendant's transaction of business in Arkansas and its conduct that harmed Plaintiff in Arkansas.

## THE INSURANCE POLICY

13.     Exhibit 1 to the Complaint contains a copy of the Policy issued by National Fire to Smith-Keys. The Policy defines "Insured" as Plaintiff, Smith-Keys:

> **Named Insured and Mailing Address**:
>
> Smith-Keys Apartments
> c/o Taliafaro, Inc. (a managing agent for Plaintiff)
> P.O. Box 292405
> Nashville, TN 37229
>
> Business Description: Apartments. *See* **Ex. 1.**

14.     The Policy was in effect when the fire occurred at the Smith-Keys Apartments on September 25, 2012:

> Policy Period: From 7/27/12 – 7/27/13.

- 4 -

15.     The Policy is comprised of coverage parts and forms (on Schedule F of the Policy), including a Commercial Property Coverage part entitled "Building and Personal Property Coverage," Form P 00 10 04 026:

> THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.
>
> Commercial Property Coverage Part
>
>       *           *           *
>
> Premiums Shown as Payable:  $56,500 at inception
>
>       *           *           *
>
> Forms Applicable to All Coverage Parts:
>
>       *           *           *

*See* Schedule F attached.

16.     The coverage grant of the Policy provides insurance coverage for Smith-Keys' losses caused by fire—Schedule F includes the building and personal property coverage which provides:

> A. Coverage
>
> We [National Fire] will pay [Smith-Keys] for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

*See* page 1 of 14 for Form CP 00 10 04 02.  The Policy defines Covered Property as ". . . a building, meaning the building or structure described in the Declarations. . ."  The fire-damaged building at Smith-Keys Apartments is "Covered Property" under the Policy.

17. A "Covered Cause of Loss" means the causes of loss defined in the form as shown in the Declarations. *Id.* at p. 3. The Causes of Loss – Special Form – Commercial Property CP 10 30 04 02 ("Special Form") states that a Covered Causes of Loss under the National Fire Policy issued to Smith-Keys is:

> A.    Covered Causes of Loss
>
> When Special is shown in the Declarations [as it is in the Policy], covered Causes of Loss means risk of direct physical loss unless the loss is: (1) excluded in Section B, Exclusions; or (2) limited in Section C, Limitations, that follow.

The fire of September 25, 2012, is a Covered Cause of Loss under the Policy, and National Fire is obligated to pay all covered losses sustained by Smith-Keys up to the applicable limit of insurance.

18. The Special Form initially excludes any obligation of National Fire to pay for increased costs of construction incurred by Smith-Keys in rebuilding the 44-year-old Apartments to comply with current building codes and other laws:

> B.    Exclusions
>
> > 1. We [National Fire] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> >
> > > a.  Ordinance or Law
> > >
> > > The enforcement of any Ordinance or Law: (1) regulating the construction, use or repair of any property; or (2) requiring the tearing down of any property, including the cost of moving its debris.
> > >
> > > This exclusion, Ordinance or Law, applies whether the loss results from: ". . . (2) the increased cost incurred to comply with an Ordinance or Law in the course of construction, repair, renovation, remodeling or

- 6 -

> demolition of property, or removal of its debris,
> following a physical loss to that property.

Had Smith-Keys not purchased the Ordinance or Law coverage endorsement with $500,000 limits, Exclusion B, 1a. of the Special Form would eliminate any coverage obligation National Fire has to pay for some $400,000 in demolition and increased costs of construction for the fire-damaged Apartments owned by Plaintiff.

19.     Smith-Keys bought an Ordinance or Law coverage endorsement that negated the Ordinance or Law exclusion in the Special Form, and provided increased costs of construction coverage for rebuilding the Apartments to current building codes and law if they sustained fire damage:

> This endorsement changes the Policy. Please read it carefully.
>
> **ORDINANCE OR LAW COVERAGE**
>
> This endorsement modifies the insurance provided under the following:
>
> Building and Personal Property Coverage Form
>
> Commercial Property Form CP 04 05 04 02 (and the Special Form incorporated therein).

The Ordinance or Law Coverage provides coverages A, B and C that state in pertinent part:

> **D.    Coverage**
>
> **1.  Coverage A—Coverage For Loss To The Undamaged Portion Of The Building**
>
> With respect to the [Smith-Keys Apartments] building that has sustained covered direct physical damage, we [National Fire] will pay under Coverage A for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

- 7 -

713457

Coverage A is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage A does not increase the Limit of Insurance.

**2. Coverage B—Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

**3. Coverage C—Increased Cost of Construction Coverage**

a. With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

   (1) Repair or reconstruct damaged portions of that building; and/or

   (2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

   when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

   However:

   (1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

   (2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

   The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

b. When a building is damaged or destroyed and Coverage C applies to that building in accordance with 3.a. above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in 3.a:

713457

(1) the cost of excavations, grading, back-filling and filling;

(2) Foundation of the building;

(3) Pilings; and

(4) Underground pipes, flues and drains.

The items listed in b.(1) through b.(4) above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision, 3.b.

20.     Based upon the provisions of the Building and Personal Property Coverage Form, and the Special Form, as modified by the Law or Ordinance coverage endorsement of the Policy, Smith-Keys has full coverage under Coverages A, B and C of the Ordinance or Law endorsement for the loss to undamaged portions of the fire-damaged Apartments, demolition costs and the increased costs of construction to rebuild the Apartments to their condition when the fire occurred.

**COUNT I**

**SMITH-KEYS IS ENTITLED TO A DECLARATORY JUDGMENT THAT THE LIMIT OF COVERAGE AVAILABLE UNDER THE ORDINANCE OR LAW COVERAGE ENDORSEMENT IS $500,000**

21.     The Ordinance or Law Coverage Endorsement has a Schedule that provides Coverage A, B and C is for "ALL "buildings" at Smith-Keys based upon a single premium. This endorsement states Smith-Keys has full limits for Coverage A, and a "Combined Limit" for Coverages B and C that states:

$ 10% OF * *
$ BLDG TIV * *
$ AFFECTED

Directly below the above-quoted Coverage A, B and C Schedule, the endorsement says:

> Information required to complete this Schedule, **if not shown on this endorsement**, will be shown in the Declarations. [Emphasis added.]

The "information required to complete this Schedule" for the Combined Limits of Coverages B and C is not shown in the Ordinance or Law endorsement as it only says in cryptic terms:

> $ 10% OF * *
> $ BLDG TIV * *
> $ AFFECTED

The plain language of the Policy, thus, requires reliance on information in the Declarations of the Policy to complete the schedule and determine the amount of the Combined Limits Coverage B and C under the Ordinance or Law endorsement.

22. In the Declarations of the Policy under limits of insurance, it states:

| | | COVERAGES PROVIDED | INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN | | | |
|---|---|---|---|---|---|---|
| **PREM** | **BLDG** | **COVERAGE** | **LIMIT OF INSURANCE** | **COVERED CAUSES OF LOSS** | **COINSURANCE\*** | **RATES** |
| ALL | ALL | Building | See Limit Addendum | SPECIAL | | Incl. |
| ALL | ALL | Business Income | See Limit Addendum | SPECIAL | | Incl. |
| ALL | ALL | Personal Property | See Limit Addendum | SPECIAL | | Incl. |
| | | | | *IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT | | |

| | | OPTIONAL COVERAGES | APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW | | | |
|---|---|---|---|---|---|---|
| **PREM** | **BLDG** | **COVERAGE** | **AGREED VALUE EXPIRATION DATE** | **AMOUNT** | **VALUE OPTION** | **INCLUDING "STOCK"** |
| ALL | ALL | Building | 07/27/13 | See Limit Addendum | Replacement Cost | |
| ALL | ALL | Personal Property | 07/27/12 | See Limit Addendum | Replacement Cost | |

23. The Limit Addendum of the Policy states: "It is understood and agreed that the limit of this Policy is: $5,000,000.00."

24. Applying the "Combined Limit" language for Coverages B and C in the Ordinance or Law Endorsement "10% of Bldg TIV (or Total Insured Value)," to the information from the Declarations required to complete the Schedule, results in the total insured value being the $5,000,000.00 policy limit. The limit of insurance for Law and Ordinance Coverage is, therefore, $500,000.00, *i.e.*, 10% x $5,000,000.00 TIV policy limits equals $500,000.00.

25. The term "AFFECTED" below the ambiguous Combined Limits language in the Schedule refers to the cost of demolition and ICC costs for the building that sustained or is

- 10 -

"AFFECTED" by the fire damage.  That is, there is a $500,000.00 amount of insurance for Ordinance or Law Coverage for all affected or fire-damaged apartments to be demolished and increased costs of construction to rebuild the Apartments to code as contemplated under Coverages A, B and C of the Ordinance or Law Coverage endorsement.

## COUNT II

## SMITH-KEYS IS ENTITLED TO A DECLARATORY JUDGMENT THAT THE TWO-YEAR CLAUSE IS INVALID

26.     National Fire has manipulated payments of and misrepresented coverage for insured losses and may assert its "two-year" clause to avoid paying any insured losses for demolition or increased costs of construction if the rebuild of damaged property is not completed within two years of the loss.  Importantly, this "two-year" clause is under the "Payment" section of the Ordinance or Law endorsement and only applies **after** National Fire is bound under the "Coverage" section of the endorsement to pay the insured's losses:

**E.     Loss Payment**

1.     All following loss payment Provisions, **E.2.** through **E.5.**, are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

\* \* \*

5.     If a **Combined** Limit of Insurance is shown for Coverage **B** and **C** in the Schedule above, Paragraphs **E.3.** and **E.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit of Insurance shown for Coverages **B** and **C** in the Schedule above.  Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

    **a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

    **b.** With respect to the Increased Cost of Construction:

        **(1)** We will not pay for the increased cost of construction:

           **(a)** Until the property is actually repaired or replaced, at the same or another premises; and

           **(b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.**

27. This clause is invalid, *inter alia*, for the following reasons: it contains an arbitrary time limit for payment of an insured loss **after** National Fire is obligated to pay the insured loss, it has no relationship to any prejudice or harm to the insurer, and it violates public policy against forfeiture and conversion of an insured's vested rights to payment of its insured losses owed to it.

28. If the two-year clause is enforced in this case, Smith-Keys would be deprived of over $400,000 in demolition and increased costs of construction owed by National Fire, and likely its entire $1,100,000 in insured losses as it would have to abandon the rebuild project. Smith-Keys is entitled to a declaratory judgment that the "two-year" clause is not valid or enforceable.

**COUNT III**

**NATIONAL FIRE'S FAILURE TO MAKE AN UNCONDITIONAL PAYMENT OF AMOUNTS DUE UNDER THE POLICY IS IN VIOLATION OF ARKANSAS LAW AND NATIONAL FIRE'S GOOD FAITH DUTIES**

29. Shortly after the fire on September 25, 2012, Smith-Keys notified National Fire of the loss. Smith-Keys engaged a construction consultant and others to assess and determine the scope of damages caused by the fire to the Apartments.

- 12 -

30.     Smith-Keys submitted a Sworn Proof of Loss to National Fire, seeking payment of costs incurred, and an advance of $100,000.00 to pay for the costs of the architects, consultants and other persons necessary for planning the rebuild of the fire-damaged Apartments.

31.     National Fire knew or should have known that Plaintiff was a HUD-financed Section 8 apartment complex, did not have sufficient funds to pay in advance the $100,000 costs for architects, construction consultants, other consultants, or the additional $1,000,000 in estimated demolition, remediation, rebuild and increased cost of construction to rebuild the fire-damaged apartments.     Smith-Keys could not—and still cannot—enter into certain rebuild contracts for the Apartments without knowing $400,000 in increased costs of construction and another $600,000 in rebuild costs were covered and to be paid under the Policy.

32.     National Fire retained J.S. Held who performed its own estimate of the insured losses caused by the fire.  Smith-Keys expressly incorporated, without prejudice, National Fire's own estimate of insured losses into a Partial Proof of Loss dated January 30, 2014.  *See* Ex. 2. Under Arkansas law, payment in full of the amounts owed under this Proof of Loss was due by no later than March 1, 2014.

33.     Despite repeated demands, Defendant arbitrarily refused to unconditionally pay the amounts due and owing totaling $406,210.48.   Instead, Defendant submitted an improper Sworn Proof of Loss form in late May 2014 that mischaracterized the amounts due as an "advance" in order to, among other things, avoid paying penalties in honoring its statutory obligations under Arkansas law.

34.     Based on the foregoing, Defendant owes the immediate payment of $406,210.48, plus penalties and statutory attorney's fees for its failure to timely pay the amount due and owing pursuant to the February 2, 2014 Partial Proof of Loss under its Policy.

713457

## COUNT IV

### WAIVER AND ESTOPPEL WITH RESPECT TO
### NATIONAL FIRE'S OF COVERAGE DEFENSES

35.     National Fire has never issued a reservation of rights or denial of coverage in

connection with the claim that is the subject of this lawsuit.  As a result of its conduct, it has

waived, and is estopped from asserting, any coverage defense that limits or excludes coverage or

payment under the Policy.

## COUNT V

### MISREPRESENTATION OF THE POLICY PROVISIONS
### FOR INCREASED COST OF CONSTRUCTION

36.     On May 16, 2014, National Fire misrepresented the Policy provisions and their

operation in violation of its duty of good faith when it stated:

> As promised, enclosed please find a copy of the insured's policy,
> including the Law and Ordinance Endorsement.  **As you can see
> from the endorsement, the code limit will be 10% of the
> statement of values reported by the insured of the "affected"
> building.**

The Law and Ordinance Endorsement says nothing about the "code limit" being 10% of the

statement of values reported by the insured of the "affected building."  This statement by

Defendant is a material misrepresentation of the provisions of the Law and Ordinance Coverage

Endorsement.  The Policy also contains no statement of values reported by the insured as part of

the Policy.   The above-quoted statement is a material misrepresentation by National Fire

intended to force Smith-Keys to abandon this $1,100,000 fire insurance claim.

37.     National Fire goes on in its May 16, 2014 letter to misrepresent the correct

calculation of the amount of Increased Cost of Construction insurance as $33,271.85.  It arrives

at this determination by reliance on "statements of value reported by the insured" and square

footage that are not part of the Policy, and a calculation that is not in accordance with any terms

- 14 -

within the four-corners of the Policy. By this misrepresentation, National Fire tries to induce Smith-Keys into believing that it has no insurance for, and will have to pay some $370,000 in demolition and increased costs of construction, and it should abandon the rebuild project (and thereby relieve National Fire of its obligation to pay over $1,100,000 in insured losses to Smith-Keys).

38.    National Fire concludes in its letter of May 16, 2014:  **"This sublimit [of $33,271.85 for ICC costs] will no doubt be exhausted by any code compliance instructions by your billing department."** It obviously knew this coverage position at inception of the claim almost two years ago and concealed it to harm Plaintiff and force Plaintiff to abandon any rebuilding of the Apartments in detrimental reliance on the belief that the Policy had $500,000.00 of ICC coverage. Had Plaintiff been timely informed of National Fire's position that there was only $33,271.85 of ICC coverage, it would have sued for this declaratory judgment years ago.

**WHEREFORE,** Plaintiff, Smith-Keys Village, Inc., prays there be judgment in favor of Plaintiff and herein against Defendant, National Fire & Marine Insurance Company:

(1) declaring that it has $500,000.00 in increased costs of construction coverage under its policy of insurance with National Fire & Marine Insurance Company for the fire that occurred on September 25, 2012;

(2) declaring that the "two-year" clause is invalid and unenforceable;

(3) awarding Plaintiff's compensatory damages for Plaintiff's insured losses;

(4) awarding Plaintiff its extra-contractual liability damages; and

(5) for all general, equitable, and other relief to which it may be entitled.

- 15 -

Dated:  June 27, 2014:

Respectfully submitted,

/s/ *James N. Haltom*

James N. Haltom
Arkansas Bar No. 2005011
Darby V. Doan
Arkansas Bar No. 0096064
Brent D. McCabe
Arkansas Bar No. 2014104
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX  75503
Telephone:  (903) 255-1000
Facsimile:  (903) 255-0800
Email:  jhaltom@haltomdoan.com
Email:  ddoan@haltomdoan.com
Email:  bmccabe@haltomdoan.com

*/s/ Campbell E. Wallace*
**CAMPBELL E. WALLACE (#13195), T.A.**
**JOSEPH N. MOLE (# 09538)**
**EVERETT R. FINERAN (#31153)**
1100 Poydras Street, Suite 3700
New Orleans, LA  70163-3700
Telephone:  (504) 599-8000
Facsimile:  (504) 599-8100
Email: cwallace@frilot.com
Email: efineran@frilot.com

KURT V. BEASLEY
WATERFORD LAW GROUP, PLLC
Sup. Ct. No. 11401
2550 Meridian Blvd., Suite 350
Franklin, Tennessee  37067
(615) 373-2500
ERIK J. GAINES
WATERFORD LAW GROUP, PLLC
Sup. Ct. No. 31801
2550 Meridian Blvd., Suite 350
Franklin, Tennessee  37067
(615) 373-2500

***ATTORNEYS FOR PLAINTIFF,***
***SMITH-KEYS VILLAGE, INC.***

713457